UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

JUDY M. GUICE, INDIVIDUALLY AND ON                                    PLAINTIFF
BEHALF OF ALL OTHERS SIMILARLY SITUATED

V.                                                          CIVIL ACTION NO. 1:06CV1-LTS-RHW

STATE FARM FIRE & CASUALTY COMPANY, ET AL.                   DEFENDANTS


MEMORANDUM OPINION

There are several pending motions before the Court in this cause of action.  Defendant
State Farm Fire & Casualty Company (State Farm) has filed a motion to dismiss the complaint
under Fed. R. Civ. P. 12(b)(6).  This motion also addresses Fed. R. Civ. P. 9(b)'s requirement
that "all averments of fraud . . . [and] the circumstances constituting fraud . . . shall be stated with
particularity."  Plaintiff has filed a Motion for Declaratory Judgment and a Motion, which has
been supplemented, to Certify Class.  In addition, State Farm has filed objections to orders
entered by the United States Magistrate Judge and motions for protective order and to stay with
respect to discovery and other matters related to class certification.  Finally, the American
Insurance Association, the National Association of Mutual Insurance Companies, and the
Property Casualty Insurers Association of America have requested leave to file briefs as *amici
curiae*.

FACTUAL BACKGROUND

Coming in at just over forty-seven pages, and with footnotes included, Plaintiff's "Class
Action Complaint on Contract of Insurance" is hardly an example of Fed. R. Civ. P. 8(a)'s
admonition that a pleading which sets forth a claim for relief "shall contain . . . a short and plain
statement of the claim showing that the pleader is entitled to relief," but it succeeds in providing
an overview of some of the issues with which this Court must deal arising from Hurricane
Katrina.  It adds the notions of class action and injunctive relief to the mix.

With respect to her individual situation, Plaintiff's principal residence in Ocean Springs,
Mississippi,  was completely destroyed during Hurricane Katrina on August 29, 2005.  She
maintained a homeowners policy of insurance issued by State Farm, and in due course filed a
claim for, among other things, the loss of her dwelling, including dwelling extension benefits;
personal property; and additional living expenses because the home was uninhabitable.

By letter dated November 9, 2005 (Exhibit D to Complaint), State Farm informed Plaintiff, in pertinent part:

> Based on our site inspection and other related facts, we have found that the damage to your home . . . was caused by wind and flood water.
>
> With respect to the damage caused specifically by wind, enclosed is a draft in the amount of $11,466.39.  This payment is based on our estimate to repair damage to your barn, located off premises caused by wind . . . .
>
> Our investigation is now complete and we have determined that all of the other damage not previously paid for was a result of flood, surface water, waves and/or tidal water.  Damages resulting from these causes of loss are not covered by your policy  . . . .
>
> Water damage caused by flood, surface water, waves, and tidal water is not covered by your policy.

The letter went on to refer to specific policy provisions dealing with losses not insured, which the Court will address in more detail in this opinion, and reserved the right to assert such additional policy defenses at any time.

In its Motion to Dismiss, State Farm maintains that the water damage exclusion, as well as the weather conditions provision, unambiguously bar coverage caused by a combination of wind and water.  On the other extreme, it is Plaintiff's position that, since she suffered a total loss to her home, caused in part by wind, then State Farm is liable for the full policy limits notwithstanding the fact that water damage is excluded from coverage.  It is necessary to examine the relevant portions of the subject insurance policy, which is attached to the Complaint as Exhibit A.

There is a Section 1 of the policy entitled "Losses Insured" which includes Coverage A insuring the dwelling "for accidental direct physical loss to the property  . . . , except as provided in **SECTION 1–LOSSES NOT INSURED,**" and  Coverage B insuring personal property

> for accidental direct physical loss to property ... caused by the following *perils*, except as provided in **SECTION 1–LOSSES NOT INSURED** :  . . . 2.  **Windstorm or hail**: This *peril* does not include loss to property contained in the building caused by rain, snow, sleet, sand or dust. *This limitation does not apply when the direct force of wind or hail damages the building causing an opening in a roof or wall and the rain, snow, sleet, sand or dust enters through this opening . . . .*  (Emphasis added).

There is a separate Section 1 called "Losses Not Insured" which reads, in pertinent part:

> 1.  We do not insure for any loss to the property described in Coverage A which consists of, or is directly and immediately caused by, one or more of the *perils*

listed in items a. through n. below, regardless of whether the loss occurs suddenly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these:

a.  collapse, *except as specifically provided* in **SECTION 1–ADDITIONAL COVERAGES, Collapse; . . .**  (Emphasis added).

It should be noted that the collapse provision in the referenced **SECTION 1–ADDITIONAL COVERAGES** applies to the "direct physical loss to *covered property* involving the sudden, entire collapse of a building or any part of a building.  Collapse means actually fallen down or fallen into pieces.  It does not include settling, cracking, shrinking, bulging, expansion, sagging or bowing."  (Emphasis added).  Further, "collapse must be directly and immediately caused only by one or more of the following: a.  *perils* described in **SECTION 1–LOSSES INSURED, COVERAGE B–PERSONAL PROPERTY.**  These *perils* apply to covered building and personal property for loss insured by this Additional Coverage;" . . .  (Emphasis added).  One of those "perils" is windstorm.  Any additional coverage is "subject to all the terms, provisions, exclusions and conditions of this policy."

Paragraph numbers 2. and 3. under the Losses Not Insured section state, in part:

We do not insure under any coverage for any loss which would not have occurred in the absence of one or more of the following excluded *events*.  We do not insure for such loss regardless of: (a) the cause of the excluded *event*; or (b) other causes of the loss; or (c) whether other causes acted concurrently or in any sequence with the excluded *event* to produce the loss; or (d) whether the *event* occurs suddenly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these:

. . . .

c.  **Water Damage,** meaning:

(1) flood, surface water, waves, tidal water, tsunami, seiche, overflow of a body of water, or spray from any of these, all whether driven by wind or not; . . .

. . . .

We do not insure under any coverage for any loss consisting of one or more of the items below.  Further, we do not insure for loss described in paragraph[] . . . 2 immediately above regardless of whether one or more of the following: (a) directly or indirectly cause, contribute to or aggravate the loss; or (b) occur before, at the same time, or after the loss or any other cause of the loss:

. . . .

c. weather conditions

However, we do insure for any resulting loss from item[] . . . c. unless the resulting loss is itself a Loss Not Insured by this Section.

(Emphasis added).

Given that dismissal is proper only if it appears that the Plaintiff can prove no set of facts in support of her allegations that would entitle her to relief, *Conley v. Gibson*, 355 U.S. 41 (1957), the law governing the interpretation of the insurance contract is of paramount importance.  The Court will also address ancillary issues raised by the several pending motions.

LEGAL DISCUSSION

A.

MOTION TO DISMISS

In *Tuepker v. State Farm Fire & Casualty Co.*, Civil Action No. 1:05CV559, this Court considered policy provisions similar to those in the instant case.  Unlike the Tuepker policy, Plaintiff's endorsement page does not include a Hurricane Deductible.  The fact that the Tuepker policy carried this endorsement was one factor leading  to the conclusion that the policy "was intended to cover damages sustained in a hurricane because of the effects of rain, hurricane winds, and objects that might be carried by those winds, whether or not there was also damage caused by high water," Memorandum Op. at 6-7, and the policy was found to be "ambiguous and its weather exclusion therefore unenforceable in the context of losses attributable to wind and rain that occur during a hurricane."  *Id*. at 7.  However, this distinction does not dictate a different result here.

*Tuepker* is instructive in many critical respects, including contract interpretation and the burden of proof on policy exclusions, the latter constituting an affirmative defense that rests with the insurer.  The Plaintiff's State Farm policy uses broad terms like "perils" and "events" in different contexts and without definition.  The Additional Coverage section applies to covered property, including the dwelling, lost as a result of collapse caused by a peril described in the personal property section, i.e., windstorm.  And the limitation to windstorm coverage "does not apply when the direct force of wind or hail damages the building causing an opening in a roof or wall and the rain . . . enters through this opening."  It cannot be argued legitimately that a hurricane is not a storm with wind or is not a weather condition.

Thus, while the Plaintiff and State Farm have focused on diametrically opposed interpretations of the policy language in an attempt to position themselves to gain instant victory, the fact remains that there are disputed issues that will determine the scope of coverage under this policy.  In the case's present posture, it bears repeating that this Court

> cannot know at this juncture what the evidence will be.  It is likely that both the plaintiff[] and State Farm will present expert evidence on the issue of the cause or causes of the damage to the plaintiff['s] property.  But it is my opinion, upon a thorough review of the terms of the State Farm policy, that the damage attributable to wind and rain will be covered, regardless of whether an inflow of water caused additional damage that would be excluded from coverage.

*Id*. at 8.

Put another way:

> If the evidence were to indicate that part of the plaintiff['s] losses were attributable to wind and rain (making them covered losses under the applicable provisions of the policy), and part of the loss were attributable to flooding (which is excluded from coverage), the determination of which was the proximate cause of the damage to the insured dwelling or to any given item of property (or the determination of the proportion of the damage to the insured dwelling or to any given item of property was proximately caused by each phenomenon) would be a question of fact under applicable Mississippi law . . . . Likewise, if the evidence shows that the damage occurred over time, so that wind damage preceded damage from a "storm surge," the wind damage would be a covered loss, even if subsequent damage from the "storm surge" that exacerbated the loss were properly excluded from coverage . . . .

*Id*. at 6 (citations omitted).

This Court has studied carefully the authority from this jurisdiction cited by State Farm in support of its position with respect to the exclusion in the Plaintiff's homeowners policy.  *Eaker v. State Farm Fire and Casualty Insurance Co.*, 216 F. Supp. 2d 606 (S. D. Miss. 2001); *Rhoden v. State Farm Fire and Casualty Co.*, 32 F. Supp. 2d 907 (S. D. Miss. 1998); and *Boteler v. State Farm Casualty Insurance Co.*, 876 So. 2d 1067 (Miss. Ct. App. 2004), are alike in two major ways.  All three were decided on motions for summary judgment at an entirely different stage of litigation and under an entirely different legal standard.  And, coincidentally, each involved damages from loss associated with earth movement, which was excluded in the particular policies of insurance before the respective courts.  For example, in *Rhoden*, the plaintiffs' engineers did not know what caused the earth movement.  32 F. Supp. 2d at 910.  The records in these cases showed that the losses would not have occurred in the absence of the excluded event.

In the instant case, on the other hand, State Farm acknowledges in its claim denial letter that the damage to Plaintiff's home was caused by wind *and* water, but not the alternative which would allow for wind damage independent of water.  This Court does not know everything that State Farm may have considered in the claim process (*see* Exhibit 9 to Plaintiff's Motion for Partial Class Certification–letter dated March 31, 2006, from State Farm Claims Manager James Burwell to Lee Harrell, Deputy Commissioner of the Mississippi Insurance Department; and Exhibit C to Plaintiff's Supplemental Motion to Certify Class–September 13, 2005, memo from

Property and Casualty Claim Consulting Services to State Farm Claim Associates), but at present I find my ruling in *Tuepker* to be controlling. State Farm's Motion to Dismiss will, therefore, be denied.

B.

MOTION TO CERTIFY CLASS

The Court is not convinced that this case is appropriate for class certification under any section of Fed. R. Civ. P. 23. *Tuepker* alluded to "fact-specific inquiries that must be resolved on the basis of the evidence adduced at trial", *id.* at 8, and in *Comer v. Nationwide Mutual Insurance Co.*, 1:05CV436, which denied Rule 23 relief, it was determined that "[t]he nature and extent of the property damage the owners sustain from the common cause, Hurricane Katrina, will vary greatly in its particulars, depending on the location and condition of the property before the storm struck and depending also on what combination of forces caused the damage". *Comer*, Memorandum Op. at 2-3.

Although *Comer* was an attempt to certify both a plaintiff and defendant class, still "the questions of law and fact common to the members of the plaintiff class do not predominate over the questions affecting individual members of the plaintiff class". *Id.* at 4. This Court's insurance docket can be described as a variety package with respect to such factors as the number of lawyers involved, the theories of recovery being pursued, or the geographical location of the loss. A number of removed cases include miscellaneous allegations against local agents for negligence and other actionable conduct, and these cases may be subject to remand to state court because of a lack of diversity jurisdiction. In sum, under the particular circumstances of hurricane loss cases, "I do not believe that a class action of this nature is a superior method of resolving the issues that will arise . . . ." *Id.* I am not persuaded otherwise by Plaintiff's Supplemental Motion to Certify.

C.

MISCELLANEOUS

Under Plaintiff's "Alternative Individual Claims," passing reference is made to "fraudulent inducement and fraudulent concealment of the corporate course of conduct . . . at the time of the Plaintiff's purchase" of her policy. Fed. R. Civ. P. 9 (b) dictates that "[i]n all averments of fraud . . . , the circumstances constituting fraud . . . shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally."

At this stage of the litigation, the Court will not dismiss these claims. The Interim Case Management Order entered June 5, 2006, indicates that after resolution of Plaintiff's Motion for Class Certification and State Farm's Motion to Dismiss, which this opinion and accompanying order accomplish, another Case Management Conference will be held, if necessary. It is

recommended that the United States Magistrate Judge conduct such a conference and address, among other issues placing this matter on a track toward trial, Plaintiff's intentions as to a claim of fraud as well as other bases for recovery including but not limited to equitable estoppel and unjust enrichment.

The denial of class certification renders moot State Farm's objections to orders entered by the United States Magistrate Judge regarding the type and timing of discovery on the class issue. Inasmuch as the Plaintiff's Motion for Declaratory Judgment is aimed at the class, it will be denied, also.

Finally, the Court acknowledges the efforts of the American Insurance Association, the National Association of Mutual Insurance Companies, and the Property Casualty Insurers Association of America.  However, their participation as *amici curiae* will not be granted.

A separate order shall be entered.  Decided this the14[th] day of August, 2006.

s/ *L. T. Senter, Jr.*

L. T. Senter, Jr.
Senior Judge